1    MARY E. ALEXANDER, ESQ. (SBN: 104173)
     BRENDAN D.S. WAY, ESQ. (SBN: 261705)
2    Mary Alexander & Associates, P.C.
3    44 Montgomery Street, Suite 1303
     San Francisco, California 94104
4    Telephone: (415) 433-4440
     Facsimile: (415) 433-5440
5

6    ELIZABETH J. CABRASER (SBN: 083151)
     JONATHAN D. SELBIN (SBN: 170222)
7    MARK P. CHALOS (*Pro Hac Vice Forthcoming*)
     Lieff Cabraser Heimann & Bernstein, LLP
8    275 Battery Street, 29th Floor
     San Francisco, CA 94111-3339
9    Telephone:  (415) 956-1000
     Facsimile:  (415) 956-1008
10

11   *Attorneys for Plaintiffs*

12

13                   UNITED STATES DISTRICT COURT

14                 NORTHERN DISTRICT OF CALIFORNIA

15

16   ROBERT ARCHER; MARLENE ARCHER;   )  Case No.:  3:20-cv-02381
     JACQUELINE GRAHAM; ROBERT        )
17   GRAHAM; PAMELA GUISTI; MICHAEL   )  **CLASS ACTION AND INDIVIDUAL**
18   GUISTI; VALERIE PASQUINI WILLSEA; )  **COMPLAINT FOR DAMAGES**
     MICHAEL R. NEKY;and GINA M.      )
19   PALLOTA on behalf of themselves and all )  1. NEGLIGENCE
     others similarly situated,       )  2. GROSS NEGLIGENCE
20        Plaintiffs,                  )
                                       )  **DEMAND FOR JURY TRIAL**
21        vs.                          )
     CARNIVAL CORPORATION & PLC;      )
22   PRINCESS CRUISE LINES LTD.; and  )
23   FAIRLINE SHIPPING INTERNATIONAL  )
     CORPORATION, LTD.,               )
24                                     )
          Defendants.                  )
25   _____

26               **COMPLAINT AND JURY DEMAND**

27        Plaintiffs ROBERT ARCHER, MARLENE ARCHER, JACQUELINE GRAHAM,

28   ROBERT GRAHAM, PAMELA GUISTI, MICHAEL GUISTI, VALERIE PASQUINI

WILLSEA, MICHAEL R. NEKY, and GINA M. PALLOTA bring this action for themselves and on behalf of all persons similarly situated, the more than 2000 passengers who sailed on the roundtrip Grand Princess Cruise from San Francisco, California on February 21, 2020, to Hawaii, against Defendants, PRINCESS CRUISE LINES LTD. ("PRINCESS") and its parent company CARNIVAL CORPORATION & PLC ("CARNIVAL"), and FAIRLINE SHIPPING INTERNATIONAL CORPORATION, LTD. ("FAIRLINE") and allege:

**THE PARTIES**

1.      Plaintiff Robert Archer is *sui juris*, and is a resident of San Francisco County, California and was a passenger onboard the Grand Princess cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

2.      Plaintiff Marlene Archer is *sui juris*, and is a resident of San Francisco County, California and was a passenger onboard the Grand Princess cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

3.      Plaintiff Jacqueline Graham is *sui juris*, and is a resident of San Francisco County, California and was a passenger onboard the Grand Princess cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

4.      Plaintiff Robert Graham is *sui juris*, and is a resident of San Francisco County, California and was a passenger onboard the Grand Princess cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

5.      Plaintiff Pamela Guisti is *sui juris*, and is a resident of San Mateo County, California and was a passenger onboard the Grand Princess cruise from February 21, 2020, to disembarkation on or about March 10, 2020. She has been diagnosed with and treated for COVID-19 as a result of exposure aboard the Grand Princess.

6.      Plaintiff Michael Guisti is *sui juris*, and is a resident of San Mateo County, California and was a passenger onboard the Grand Princess cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

7.      Plaintiff Valerie Pasquini Willsea is *sui juris*, is a resident of San Mateo County, California and was a passenger onboard the Grand Princess cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

8.      Plaintiff Michael R. Neky is *sui juris*, is a resident of Stanislaus County, California and was a passenger onboard the Grand Princess cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

9.      Plaintiff Gina M. Pallota is *sui juris*, is a resident of Stanislaus County, California and was a passenger onboard the Grand Princess cruise from February 21, 2020, to disembarkation on or about March 10, 2020.

10.     Defendant CARNIVAL CORPORATION was incorporated in 1972 in Panama. Carnival plc was incorporated in 2000, in Wales, United Kingdom. As described by CARNIVAL in a filing with the Securities and Exchange Commission, "Carnival Corporation and Carnival plc operate a dual listed company ('DLC'), whereby the businesses of Carnival Corporation and Carnival plc are combined through a number of contracts and through provisions in Carnival Corporation's Articles of Incorporation and By-Laws and Carnival plc's Articles of Association." Carnival Corporation and Carnival plc operate as a single economic enterprise. They share a senior executive management team and identical Boards of Directors. The dual-listed company has its headquarters in Miami, Florida. This lawsuit is being brought against the dual-listed company and/or Carnival Corporation.

11.     Upon information and belief, Defendant PRINCESS CRUISE LINES LTD. is incorporated in Bermuda, with its headquarters in Santa Clarita, California.

12.     Upon information and belief, FAIRLINE SHIPPING INTERNATIONAL CORPORATION, LTD. ("FAIRLINE") is incorporated and maintains its headquarters in Bermuda. As a wholly-owned subsidiary of CARNIVAL, *see infra*, FAIRLINE is and was at all times hereto the owner of the Grand Princess. FAIRLINE permits CARNIVAL and PRINCESS to manage and operate the Grand Princess on its behalf.

CLASS ACTION COMPLAINT

13.     Upon information and belief, at all times hereto, PRINCESS and CARNIVAL advertised, marketed, sold, and profited (directly or indirectly) from and controlled and operated the cruise ship, Grand Princess.

## ALTER EGO/PIERCING CORPORATE VEIL

14.     Defendants PRINCESS, FAIRLINE, and CARNIVAL are alter egos and/or agents of each other such that the corporate form should be disregarded.

15.     CARNIVAL has ownership and control over PRINCESS, which is organized under Holland America Group within Carnival Corporation & plc. CARNIVAL has claimed in filings with the Securities and Exchange Commission (hereinafter SEC) that it wholly owns PRINCESS as a subsidiary.

16.     CARNIVAL and PRINCESS share the same Board of Directors and almost all of the same executive officers, and appear to use the same assets.

17.     CARNIVAL serves as the parent company for PRINCESS, which it calls a "Carnival Brand" cruise line and which CARNIVAL refers to as part of "our growing business." CARNIVAL exerts control over PRINCESS's business and day-to-day operations.

18.     CARNIVAL likewise has ownership and control over FAIRLINE. FAIRLINE is owned by a holding company, which is in turn owned by CARNIVAL. CARNIVAL has claimed in SEC filings that it wholly owns FAIRLINE as a subsidiary.

19.     FAIRLINE shares a business address in Valencia, California, with PRINCESS, a wholly-owned subsidiary of CARNIVAL.

## JURISDICTION

20.     This Court has Admiralty subject matter jurisdiction pursuant to 28 U.S.C. § 1333 as this case involves a maritime tort. The type of incident and injuries suffered by Plaintiffs had the potential to impact maritime commerce as Plaintiffs were and are at serious risk of imminent harm as a result of exposure to COVID-19 aboard the cruise ship upon which they were paying passengers.

21.     This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act, codified at 28 USC §1332(d)(2)(A) and (C), because the claims of the proposed Class Members exceed $5,000,000 and because at least one member of the Proposed Class of plaintiffs is a citizen of a state different from at least one Defendant,  including the named Plaintiffs who are citizens of the State of California.

22.     This Court has personal jurisdiction over defendants, who conduct business in this district, and *in rem* jurisdiction over the Grand Princess, which has been at dock in the Northern District of California or moored in the San Francisco Bay almost continuously since March 4, 2020. The Grand Princess is presently docked at Pier 35, Port of San Francisco.

23.     Defendant PRINCESS has its headquarters in Santa Clarita, California.

24.     CARNIVAL, including by and through its subsidiary, PRINCESS, conducts substantial business within the state of California.

25.     Upon information and belief, CARNIVAL, by and through its subsidiary, PRINCESS, markets cruise vacations to California residents and employs thousands of California residents to work at its California headquarters. The Court has personal jurisdiction over CARNIVAL because CARNIVAL is authorized to do business in California, conducts substantial business in California and some of the actions giving rise to this Complaint took place in California. Moreover, the claims asserted herein arise from Defendants' contacts with California. Each of these facts independently, but also all of these facts together, are sufficient to render the exercise of jurisdiction by this Court over CARNIVAL permissible under traditional notions of fair play and substantial justice.

26.     Upon information and belief, FAIRLINE conducts business in California and this District. It owns the Grand Princess, which routinely travels to and from California, taking on passengers and provisions in Califonia, and carries California residents as passengers pursuant to advertisements and marketing of cruises in California, including the cruise giving rise to the claims in this lawsuit.

CLASS ACTION COMPLAINT

**VENUE**

27.     Although the Passage Contract purports to contain a venue selection provision designating the United States District Court for the Central District of California in Los Angeles, venue is nevertheless proper in this District for reasons including:

a.      Under 28 U.S.C. § 1391 Defendants are deemed to reside in any judicial district in which it is subject to personal jurisdiction.

b.      Defendants transact business within this District and some of the material acts establishing the claims at issue arose in this district, including that passengers embarked onto the vessel, the vessel departed and returned to a port in this District, and passengers were quarantined in this District after disembarking from the ship.

c.      The vessel remains within this District, docked at Pier 35, Port of San Francisco:



d.      All of the named Plaintiffs reside in this District. As a result of the Covid-19 pandemic and current shelter-in-place orders in effect in California, travel is untenable for Plaintiffs, who must remain in the Northern District of California;

CLASS ACTION COMPLAINT

e.      A majority of relevant witnesses are located in this District, including employees at the Port of Oakland, physicians who treated passengers after they disembarked the Grand Princess, responders who assisted in the transport of passengers from the vessel to Travis Air Force base, employees at Travis Air Force base, and much of the crew of the Grand Princess.

f.      The terms of the venue provision were not reasonably communicated to the Plaintiffs.  Furthermore, the venue provision is unreasonable as applied given the totality of the circumstances, including that if Plaintiffs had been reasonably informed of the venue provision, their only recourse to reject the provision would have required canceling their reservations, which would have subjected Plaintiffs to potentially thousands of dollars in monetary penalties, including forfeiture of their deposits and/or purchase amount.

## INTRADISTRICT ASSIGNMENT

28.      In accordance with Civil L.R. 3-2(c) and 3-5, and for the reasons laid out above, including that a substantial part of the events or omissions which give rise to the claims alleged herein occurred in the City and County of San Francisco, venue in this District and Division are proper.

## FACTUAL BACKGROUND

29.      In December 2019, a new strain of Coronavirus known as COVID-19 or SARS-CoV-2 was first observed in humans in China. The virus quickly spread through China and Asia and has caused a global pandemic. Infection with COVID-19 is associated with symptoms such as fever, a dry cough, shortness of breath, infection, pneumonia, and can be fatal.

30.      As of the filing of this complaint, there have been over 350,000 cases and over 12,000 deaths in the United States as a result of COVID-19. Over 600 cases and, as of this filing, 9 deaths have been reported in San Francisco.

31.      In early February 2020, experts in the European Union, led by epidemiologist Dr. Christou Hadjichristodoulou, released guidelines for the cruise industry that included an outline of the risk of COVID-19 outbreaks aboard cruise ships and recommended response protocols.[1]

---

[1] Interim Advice for Preparedness and Response to Cases of Acute Respiratory Disease at Points of Entry in the European Union (EU) / EEA Member States (MS): Advice for ship operators for preparedness and response to the outbreak of 2019-nCoV acute respiratory disease, Feb. 3, 2020, https://www.gac.com/491364/siteassets/about-

1   Specifically, the guidelines directed that, in the event of a COVID-19 case, close contacts of the

2   case should be quarantined in their cabin or on shore, and "casual contacts" should be

3   disembarked.[2]

4       32.     Defendants CARNIVAL and PRINCESS represent that they have a commitment

5   to "the health, safety, and security" of their passengers and promote their business as one that

6   "always strives to be free of injuries, illness and loss."[3] They further assert that they "[s]upport a

7   proactive framework of risk mitigation in the areas of HESS [Health, Environment, Safety,

8   Security] aimed at preventing, monitoring and responding to threats."[4]

9       33.     However, in or before early February 2020, Defendants became aware of an

10  outbreak of COVID-19 aboard the cruise ship the DIAMOND PRINCESS, which is operated by

11  CARNIVAL and PRINCESS. The outbreak originated on the DIAMOND PRINCESS while the

12  vessel was docked in Yokohama, Japan. Ten cases were originally diagnosed, and that number

13  rapidly escalated to over 700 cases—over one-fifth of the passengers onboard.

14      34.     To date, seven of the Diamond Princess' passengers have died as a result of

15  COVID-19. At least two of these fatalities occurred before February 19, 2020. [5]

16      35.     In a February 18, 2020, update issued in response to the crisis aboard the

17  DIAMOND PRINCESS, the Center for Disease Control (CDC) stated that "the rate of new

18  reports of positives [now] on board, especially among those without symptoms, highlights the

19  high burden of infection on the ship and potential for ongoing risk."[6]

20

21

22  gac/coronavirus/eu-interim-advice_2019-ncov_maritime_4_2_2020_f.pdf (last visited April 6, 2020); *see also* Matt Apuzzo, Motoko Rich and David Yaffe-Bellany, The New York Times, *Failures on Diamond Princess Shadow Another Cruise Ship Outbreak*, March 8, 2020, https://www.nytimes.com/2020/03/08/world/asia/coronavirus-cruise-ship.html (last visited April 6, 2020).

23  [2] Healthy GateWays, Algorithm for decision making in response to an event of a suspect case of COVID-19, https://www.nytimes.com/2020/03/08/world/asia/coronavirus-cruise-ship.html (last visited April 6, 2020).

24  [3] Carnival Health, Environment, Safety, Security & Sustainability Policy & Governance, Carnival Health, Environment, Safety, Security & Sustainability Policy & Governance, https://www.carnivalcorp.com/leading-responsibly/health-environment-safety-security-sustainability-policy-governance/ (last visited April 7, 2020).

25  

26  [4] Carnival Corporation & PLC Health, Environmental, Safety, Security, and Sustainability Corporate Policy, https://www.carnivalcorp.com/static-files/0b8327aa-c3be-4022-a1a5-a6dad7123af7 (last visited April 7, 2020).

27  [5] *See* The New York Times, *Japan Reports 2 Deaths Among Cruise Ship Passengers*, Feb. 19, 2020, https://www.nytimes.com/2020/02/19/world/asia/china-coronavirus.html (last visited April 6, 2020).

28  [6] *See* Centers for Disease Control and Prevention, Update on the Diamond Princess Cruise Ship in Japan, Feb. 18, 2020, https://www.cdc.gov/media/releases/2020/s0218-update-diamond-princess.html (last visited April 6, 2020).

36.     Upon information and belief, in February, CARNIVAL also operated a voyage on the Ruby Princess, from New Zealand to Australia. News reports suggest that in mid-to-late February, Defendants became aware of COVID-19 cases onboard the Ruby Princess. Despite this information, CARNIVAL operated a second voyage on the Ruby Princess, immediately following the New Zealand-to-Australia voyage. Since the vessel docked in Australia on March 19, over 600 passengers who were on the Ruby Princess have tested positive for the virus and 10 have died. Australian authorities have announced a criminal investigation into the matter.

37.     On February 11, 2020, Defendants operated a roundtrip voyage from San Francisco to Mexico aboard the Grand Princess. On or around February 19, 2020, Defendants became aware of at least one passenger suffering from COVID-19 symptoms onboard the Grand Princess.

38.     According to CARNIVAL's Chief Medical Officer, Grant Tarling, MD, MPH, Defendants believed the infected passenger was already carrying the virus when he boarded the Grand Princess on February 11, 2020.[7] Despite their knowledge regarding COVID-19, Defendants had no effective passenger medical screening methods in place at that time.

39.     Dr. Tarling reported that the infected passenger sought medical treatment from the medical center onboard the Grand Princess on February 20, 2020.  The passenger reported suffering from "acute respiratory distress" for about a week before seeking treatment. Upon information and belief, this information would have triggered mandatory reporting under 42 CFR 71.1 *et seq.* and constitutes a "hazardous condition" per 33 CFR § 160.216.[8]

40.     Upon information and belief, at least three other passengers on the Grand Princess's Mexico trip suffered from COVID-19 symptoms while on the vessel, likely exposing dozens of other passengers to the virus. One passenger on the Grand Princess's Mexico trip died

---

[7] Thomas Fuller, John Eligon, and Jenny Gross, The New York Times, *Cruise Ship, Floating Symbol of America's Fear of Coronavirus, Docks in Oakland*, March 9, 2020, https://www.nytimes.com/2020/03/09/us/coronavirus-cruise-ship-oakland-grand-princess.html (last visited April 7, 2020).
[8] Section 160.216 requires that "[w]henever there is a hazardous condition … on board a vessel or caused by a vessel or its operation, the owner, agent, master, operator, or person in charge must immediately notify the nearest Coast Guard Sector Office . . . ."  A"[h]azardous condition means any condition that may adversely affect the safety of any vessel … or the environmental quality of any port, harbor, or navigable waterway of the United States. It may, but need not, involve … injury *or illness of a person aboard …* ." 33 CFR § 160.202 (emphasis added).

shortly after disembarking. He was reported to be the first death caused by COVID-19 in California.

41.     On February 21, 2020, the Grand Princess arrived at port in San Francisco and some of the passengers from the Mexico trip disembarked.

42.     Approximately sixty-two passengers, at least two of whom were ill, and over 1,000 crew members remained onboard the Grand Princess to continue traveling on the ship's next voyage, to Hawaii. Defendants did not implement any COVID-19 screening or medical examination procedures for crew or passengers who remained onboard and planned to travel on the Hawaii voyage.

43.     Defendants did not initiate effective measures to sanitize or disinfect the vessel in-between voyages, and did not implement any procedures for screening or testing existing or new passengers boarding the ship for the Hawaii voyage.

44.     Defendants did not notify passengers who were scheduled to board the vessel on February 21, 2020, that passengers from the prior Mexico trip had reported COVID-19 symptoms, or of the fact that passengers remaining aboard the Grand Princess had been exposed to and might be infected with and/or carrying the virus.

45.     On February 21, 2020, Plaintiffs embarked onto the Grand Princess, and the ship departed the same day. The vessel sailed to Hawaii and made multiple stops on the Hawaiian islands.

46.     On February 25, 2020, while Plaintiffs were in the midst of the Hawaii trip aboard the Grand Princess, CARNIVAL and PRINCESS sent emails to passengers who disembarked from the San Francisco-to-Mexico trip on February 21. The email alerted the past passengers about their potential exposure to COVID-19 during their time on the cruise. No such notice was effectively provided to passengers who were onboard the ship on February 25, 2020.

47.     On February 29, 2020, the vessel left Hawaii.

48.     Upon information and belief, increased sanitary precautions did not begin onboard the Grand Princess until on or about March 3, 2020.

49.     Early in the morning on March 4, 2020, the Plaintiffs and other members of the proposed Class received a health advisory from Defendants' Chief Medical Officer, Grant Tarling, MD, MPH, regarding their potential exposure. The advisory further stated that the ship would no longer be traveling to Ensenada, Mexico, as originally scheduled for March 5, and would instead return directly to San Francisco.

50.     Upon information and belief, individuals who had continued on from the prior leg of the cruise to and from Mexico began cabin-based quarantine for the first time on or around March 4, 2020. At that time, Defendants cancelled only large public gatherings, and continued hosting other events that followed the "Princess Patter," including Formal Night and its associated dinner.

51.     Because of the COVID-19 outbreak on the Grand Princess, Govenor Gavin Newsom declared a state of emergency on March 4, 2020 to manage the COVID-19 outbreak because of the death of a passenger who had been on the Mexico trip.  As a result, the State of California refused to allow the vessel into port in San Francisco.  The vessel was instead forced to anchor off the coast of San Francisco. Govenor Newsom stated at a press conference that there were 11 passengers and 10 crew members experiencing symptoms.

52.     On or about Thursday, March 5, 2020, two weeks after the ship sailed, Defendants instituted some operational changes, including cabin/state room quarantine, meal service within the cabins/state rooms, and cessation of daily turndown service and communal activities.

53.     On or about March 9, 2020, the ship was allowed to sail and arrived in the San Francisco Bay escorted by the Coast Guard.  The ship docked in Port of Oakland met by ambulances and medical personnel. During the night, a CDC employee, in full hazmat gear, knocked on the door of the cabins asking if they the passengers had any symptoms.

CLASS ACTION COMPLAINT



54.     On or about March 10, 2020, passengers, including Plaintiffs, were finally allowed to disembark, and were shuttled to Travis Air Force Base in Solano County, California for further quarantine. If any of the Plaintiffs showed symptoms, they were transported to Asilomar State Beach and Conference Grounds in Pacific Grove for treatment.

55.     At the time of this filing, Defendant CARNIVAL has cancelled future cruises embarking from San Francisco through the end of 2020.  However, CARNIVAL's website indicates that it intends to begin operating certain cruise ships as early as May 11, 2020, potentially posing grave threats to their passengers, crew members, and the public health.[9]

56.     If Plaintiffs had known that passengers from the Grand Princess's San Francisco-Mexico trip had suffered from COVID-19, or that passengers exposed to COVID-19 on the Mexico trip remained onboard the Grand Princess, Plaintiffs would not have sailed on the February 21, 2020, roundtrip to Hawaii.

57.     As a direct and proximate result of Defendants' negligence and gross negligence, Plaintiff PAMELA GUISTI became infected and was diagnosed and treated for COVID-19 in an intensive care unit at Kaiser Permanente Medical Center.

58.     As a direct and proximate result of the negligence and gross negligence of Defendants in exposing Plaintiffs and Class Members to actual risk of immediate physical injury,

---

[9] *See* Carnival, Health and Safety Updates, https://www.carnival.com/health-and-sailing-updates (last visited April 7, 2020).

Plaintiffs and Class Members have suffered injuries and emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame.

59.    Plaintiffs and Class Members were traumatized by the fear of developing COVID-19. They were confined on an infected vessel in isolation and then were confined at Travis Air Force Base for two weeks.

60.    It is expected that they will continue to suffer and will require medical services in the future. They have and will suffer medical expenses, lost earnings and earning capacity as a result.

**NOTICE**

61.    Section 16 (A)(i) of the Passage Contract purports to required that claimants provide notice to PRINCESS and CARNIVAL of any potential claims.. Although Plaintiffs do not concede that this provision is enforceable, Plaintiffs and Class Members have complied with this requirement by providing written notice to Defendants' electronically on April 7, 2020.

**CLASS ACTION ALLEGATIONS**

62.    Plaintiffs bring this lawsuit as a class action on behalf of themselves and all similarly-situated persons pursuant to Federal Rules of Civil Procedure 23(a) and (b)(1), (b)(2), (b)(3), and/or (c)(4). This action satisfies the applicable numerosity, commonality, typicality, adequacy, predominance, and/or superiority requirements of those provisions.

63.    The proposed Class is defined as follows: All persons in the United States, who sailed as passengers on the Grand Princess cruise from San Francisco, California, leaving on February 21, 2020, roundtrip to Hawaii.

64.    Excluded from the proposed Class are: (1) CARNIVAL and PRINCESS, any entity or division in which either have a controlling interest, and its legal representatives, officers, directors, assigns and successors; (2) FAIRLINE, any entity or division in which either have a controlling interest, and its legal representatives, officers, directors, assigns and successors; (3) the judicial officer(s) to whom this case is assigned and the judicial officer(s)' immediate family

1    and legal staff; and (4) governmental entities. Plaintiffs reserve the right to amend the Class

2    definition if discovery and further investigation reveal that the Class should be expanded,

3    ortherwise divided into subclasses, or modified in any other way.

4        **A.**    **Numerosity**

5        65.    There were, on information and belief, more than 2000 passengers on the Grand

6    Princess for the cruise that is the subject of this action. Their exact number and identities can be

7    readily ascertained from Defendants' records. The individual joinder of all passengers is

8    impractical, and the class action procedure is more practical, cost-effective, inclusive, and

9    efficient than multiple lawsuits on the common questions of law and fact that unite the class, or

10   piecemeal and incomplete individual joinder. The disposition of the claims of these Class

11   Members in a single action will provide substantial benefits to all parties and to the Court. Class

12   Members are readily identifiable from information and records in PRINCESS'S possession,

13   custody, or control, as well as from records kept by the Department of Health and Human

14   Services.

15       **B.**    **Typicality**

16       66.    The claims of Plaintiffs are typical of the claims of Class Members in that

17   Plaintiffs, like all Class Members, sailed on the leg of the Grand Princess cruise that began on

18   February 21, 2020. Plaintiffs, like all Class Members, have been damaged by Defendants'

19   misconduct in that they sailed on a cruise they would not have sailed on and suffered significant

20   injury, emotional distress and economic damage caused by the negligence of Defendants, and

21   each of them. The factual bases of CARNIVAL, PRINCESS, and FAIRLINE's misconduct are

22   common to all Class Members and represent a common thread of misconduct resulting in injury

23   to all Class Members.

24       **C.**    **Adequate Representation**

25       67.    Plaintiffs will fairly and adequately represent and protect the interests of the Class

26   Members. Plaintiffs have retained counsel with substantial experience in prosecuting class

27   actions, aggregate suits, and mass torts.

28

CLASS ACTION COMPLAINT

68.     Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of Class Members, and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of Class Members.

**D.      Predominance of Common Issues**

69.     There are numerous questions of law and fact, including those related to Defendants' knowledge, conduct, and duty throughout the events described in this Complaint, common to Plaintiffs and Class Members that predominate over any question affecting only individual Class Members, answers to which will advance resolution of the litigation as to all Class Members. These common legal and factual issues include, *inter alia*:

a.      what Defendants knew about the presence and risks associated with the Covid-19 virus, and contagions generally, and when they knew it;

b.      whether Defendants should have canceled the subject cruise to avoid exposing passengers to a deadly pathogen;

c.      interpretation of the applicable contract documents and the associated "Passenger Bill of Rights" incorporated therein;

d.      whether individuals who had been aboard the Grand Princess prior to the subject cruise were carriers of the COVID-19 virus;

e.      whether Defendants knew or should have known that individuals who had been aboard the Grand Princess prior to the subject cruise were or were potentially carriers of the COVID-19 virus;

f.      whether the fact that prior passengers had or were potential carriers of the COVID-19 virus constitutes a material fact reasonable consumers would have considered in deciding whether to embark on the subject cruise;

g.      whether Defendants had a duty to disclose that individuals who had been aboard the Grand Princess prior to the subject cruise were or were potentially carriers of the COVID-19 virus;

CLASS ACTION COMPLAINT

h.      whether Defendants failed to disclose that individuals who had been aboard the Grand Princess prior to the subject cruise were or were potentially carriers of the COVID-19 virus;

i.      whether Defendants had a duty to decontaminate the Grand Princess after they knew or should have known that individuals who had been aboard the Grand Princess prior to the subject cruise were or were potentially carriers of the COVID-19 virus, and/or after it had been disclosed 2 days prior to embarking on the subject leg of the cruise that passengers on the Diamond Princess had perished due to the COVID-19 virus;

j.      whether FAIRLINE had a duty to ensure that its vessel, the Grand Princess, was being safely and securely maintained and operated—including, but not limited to, the following of appropriate cruise line protocols related to contagion;

k.      whether FAIRLINE, as owner of the Grand Princess, had a duty to ensure that passengers and crew members aboard its vessel were not subject to actual and unreasonable risk of contracting COVID-19;

l.      whether FAIRLINE breached its duty to ensure the safety of passengers when it failed to ensure that CARNIVAL and PRINCESS were properly managing and maintaining the vessel, and when it failed to ensure that CARNIVAL and PRINCESS were taking steps to disinfect the contaminated vessel, and when it permitted CARNIVAL and PRINCESS to continue operating the Grand Princess as a cruise ship despite its knowledge of the actual and extreme risk to passengers and crew;

m.      whether CARNIVAL is liable for the acts, omissions, and violations described in this Complaint;

n.      whether PRINCESS is liable for the acts, omissions, and violations described in this Complaint;

o.      whether FAIRLINE is liable for the acts, omissions, and violations described in this complaint; and

CLASS ACTION COMPLAINT

p.      whether the conduct of any or all of the defendants warrants the imposition of punitive damages, to vindicate the societal interest in punishment and deterrence, and how to equitably allocate the punitive damages award among all passengers.

**E.      Superiority**

70.      Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of CARNIVAL, PRINCESS, and FAIRLINE'S unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

71.      Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims (compared to the cost of litigation), it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy.

72.      Class treatment of common questions of law and fact is superior to other available procedures, such as multiple individual actions or piecemeal litigation because class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

**F.      Mass Action**

73.      In the alternative, this matter should proceed as a mass action, as defined in 28 U.S.C. § 1332 (d)(11)(B)(i) and should be tried jointly on the ground that plaintiffs' claims involve common questions of law or fact, including as set forth above.

74.      Plaintiffs' individual claims exceed the required jurisdictional amount of $75,000.00.

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLAIMS FOR RELIEF**

**FIRST CAUSE OF ACTION**
**NEGLIGENCE AGAINST ALL DEFENDANTS**

75.     Plaintiffs re-allege all allegations in all preceding paragraphs as if alleged fully herein.

76.     Defendants owed Plaintiffs, and the Class, who were passengers who boarded the Grand Princess on February 21, 2020, a duty to ensure that they would not be exposed to an unreasonable risk of harm.

77.     Likewise, Defendants owed Plaintiffs and the Class a duty to take actions to prevent and mitigate the risk of threats to passengers' health and safety, including by ensuring that the Grand Princess was properly cleaned, disinfected, and safely maintained.

78.     Defendants knew or should have known that cruise ships pose an especially severe risk of viral outbreak. Defendants knew or should have known that cruise ships owned and operated by Defendants had been the sites of prior, lethal outbreaks of COVID-19, and should have been aware of new guidelines for the cruise industry published by Dr. Hadjichristoulou and a team of European experts on February 3, 2020. In particular, Defendants had knowledge of the actual risks facing passengers based on the outbreak of the virus on the Diamond Princess a mere three weeks prior to the instant outbreak.

79.     Defendants knew or should have known that passengers traveling on the Grand Princess had suffered COVID-19 symptoms and that passengers aboard the Grand Princess's San Francisco-Mexico voyage who remained onboard the vessel for the San Francisco-Hawaii voyage were or could have been exposed to and were or could have been carriers of the virus.

80.     Defendants knew or should have known that crew aboard the Grand Princess were or could have been exposed to COVID-19 and were or could have been carriers of the virus.

81.     Defendants failed to do what a reasonably careful cruise ship owner and operator would do under the circumstances.

CLASS ACTION COMPLAINT

82.     Defendants breached their duty to Plaintiffs and the Class when, with the aforementioned knowledge, Defendants nevertheless chose to embark on the San Francisco-Hawaii voyage.

83.     Defendants also breached their duties when, with that same knowledge, they chose not to screen or medically examine any passengers or crew, including the approximately sixty-two passengers and over 1,000 crew members who had traveled on the San Francisco-Mexico trip and were also traveling on the San Francisco-Hawaii trip.

84.     Defendants further breached their duties to Plaintiffs and the Class when, with the above-mentioned knowledge, Defendants boarded, without additional decontamination and screening protocols, Plaintiffs and the Class onto the likely-infested ship and negligently chose not to notify Plaintiffs and the Class of:  the actual risk that the ship was infested with COVID-19 due to prior passengers' infections; the actual and extreme risks of contracting COVID-19 while using facilities on the vessel; and/or the actual and extreme risks of contracting COVID-19 while mingling with passengers and crew who had traveled on the Mexico voyage.

85.     Additionally, Defendants breached their duties to Plaintiffs and the Class when, on or before February 25, 2020, Defendants repeatedly failed to notify passengers aboard the Grand Princess during the San Francisco-Hawaii voyage that passengers on the Mexico voyage had been diagnosed with COVID-19, that one had died, and that certain passengers and crew from that trip remained onboard the Grand Princess.

86.     If Defendants had adequately informed Plaintiffs and the Class prior to boarding, or at any other time, of the relevant information in Defendants' possession, including facts regarding the Grand Princess, its prior passengers, continuing passengers and crew, lack of adequate screening, lack of adequate disinfecting procedures, lack of adequate quarantining procedures, and the actual risk of exposure, Plaintiffs and the Class could have made informed decisions about their health and their families' health, including disembarking from or not boarding the vessel.

87.     Defendants repeatedly breached their duties to Plaintiffs and the Class when, throughout the San Francisco-Hawaii voyage, with the aforementioned knowledge, they

CLASS ACTION COMPLAINT

1   repeatedly chose not to inform Plaintiffs of the continuing and growing risks of contracting

2   COVID-19, and chose not to provide Plaintiffs with the informed option to disembark at one of

3   the vessel's ports of call.

4          88.   Finally, Defendants continued to breach their duties to Plaintiffs and the Class

5   when, throughout the duration of the Grand Princess's San Francisco-Hawaii voyage, with the

6   aforementioned knowledge and without any warning to Plaintiffs and the Class, they, *inter alia*,

7   chose not to implement quarantine or social distancing protocols; chose to continue operating

8   large, public gatherings and meals; chose to continue to operate daily turndown service; and

9   chose to continue hosting communal activities.

10          89.   As a direct and proximate result of Defendants' failure to safeguard Plaintiffs and

11   the Class, Plaintiffs and the Class were at actual risk of immediate physical injury.

12          90.   As a direct and proximate result of Defendants' breach of their duties of care,

13   Plaintiff PAMELA GUISTI became infected and was diagnosed and treated for COVID-19 in an

14   intensive care unit at Kaiser Permanente Medical Center.

15          91.   As a direct and proximate result of the aforementioned negligence of Defendants

16   in exposing them to actual risk of immediate physical injury, Plaintiffs and the Class have

17   suffered physical injury, emotional distress, including, but not limited to, suffering, anguish,

18   fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame. They were

19   traumatized by the fear of developing COVID-19. They were confined on an infected vessel in

20   isolation and then were confined at Travis Air Force Base for two weeks. It is expected that they

21   will continue to suffer and will require medical services in the future. They have and will suffer

22   medical expenses, lost earnings and earning capacity as a result.

23

24   **SECOND CAUSE OF ACTION**
**GROSS NEGLIGENCE AGAINST ALL DEFENDANTS**

25          92.   Plaintiffs re-allege all allegations in all preceding paragraphs as if alleged fully

26   herein.

27

28

CLASS ACTION COMPLAINT

93.     Defendants owed duties to Plaintiffs and the Class to: safeguard against and mitigate the risks of passenger injury and illness; appropriately disinfect and sanitize the Grand Princess, in light of the circumstances of a global pandemic; notify Plaintiffs and the Class of the actual and especially high risk of contracting COVID-19 aboard the Grand Princess; disembark passengers and crew members who had likely come into contact with individuals infected with COVID-19;and impelement medical screening and examination protocols for crew and passengers.

94.     Defendants knew of the unreasonably high risk of viral contagion of COVID-19 on cruise ships, and Defendants knew that it was especially dangerous to expose Plaintiffs and the rest of the Class to COVID-19 in light of the situation on the Diamond Princess off the coast of Japan only 3 weeks prior.

95.     Defendants' conduct in deciding to continue to operate the Grand Princess with Plaintiffs and the Class aboard, even with the aforementioned knowledge, demonstrates an intentional failure to do what a reasonably careful cruise ship owner and operator would do under the circumstances, exhibits a willful and conscious disregard for the safety of Plaintiffs and the Class, and evidences recklessness and indifference by Defendants, which constitutes gross negligence.

96.     Defendants' failure to abide by the guidelines issued on February 3, 2020, by not disembarking, on February 21, 2020, passengers known to have been in casual contact with individuals who reported COVID-19 symptoms and were later diagnosed with the virus, constitutes a failure to provide even a modicum of care to Plaintiffs and the Class. Furthermore, the continued and repeated choice not to quarantine or otherwise shelter in their cabins the passengers and crew members who traveled on the San Francisco-Mexico voyage demonstrates a willful and conscious disregard for the rights and safety of others and amounts to an extreme departure of what a reasonably careful cruise ship owner and operator would do.

97.     Defendants' choice not to warn Plaintiffs and the Class of their actual risk of harm in being exposed to COVID-19, either prior to boarding or while they were already on board, in light of the prior passenger who came down with symptoms and later died, along with others from

1    that prior voyage that exhibited symptoms, and the crew member who disembarked during this

2    voyage due to COVID-19-related illness, constitutes a failure to provide even a modicum of care

3    to Plaintiffs and the Class. The continued and repeated choice to provide passengers no notice of

4    the actual risks facing them demonstrates a willful and conscious disregard for the rights and

5    safety of others and amounts to an extreme departure of what a reasonably careful cruise ship

6    owner and/or operator would do.

7         98.    Moreover, Defendants'demonstrated a willful and conscious disregard for the

8    rights and safety of others, and an extreme departure of what a reasonably careful cruise ship

9    owner and/or operator would do in their continued and repeated choices to:  not effectively

10   sanitize and disinfect the Grand Princess, either before or during the San Francisco-Hawaii

11   voyage; not institute medical screening and examinations for passengers and crew membres; host

12   large social gatherings and meals; conduct daily turn-down service; and not impeelement

13   quarantine or social distance protocols until March 5, 2020. These decisions manifest Defendants'

14   utter failure to provide even a modicum of care to Plaintiffs and the Class.

15        99.    Defendants chose to place profits over people, including the safety of their

16   passengers, crew and the general public in continuing to operate business as usual, despite their

17   knowledge of the actual, potentially-lethal, risk to Plaintiffs and the Class.

18        100.   As a direct and proximate result of Defendants' failure to provide even scant care

19   to Plaintiffs and the Class, Plaintiffs were placed at actual, continual risk of immediate, and

20   potentially deadly, physical injury.

21        101.   Indeed, as a direct and proximate result of Defendants' extreme departure from the

22   ordinary standard of care and their failure to meet their duties of care to Plaintiffs and the Class

23   by providing even scant care, Plaintiff PAMELA GUISTI became infected and was diagnosed

24   with and treated for COVID-19 in an intensive care unit at Kaiser Permanente Medical Center.

25        102.   Finally, as a direct and proximate result of Defendants' gross negligence in

26   exposing Plaintiffs and the Class to actual risk of immediate physical injury, Plaintiffs and the

27   Class have suffered emotional distress, including, but not limited to, suffering, anguish, fright,

28   horror, nervousness, grief, anxiety, worry, shock, humiliation and shame. They were traumatized

by the fear of developing COVID-19. They were confined on an infected vessel in isolation and then were confined at Travis Air Force Base for two weeks. It is expected that they will continue to suffer and will require medical services in the future. They have and will suffer medical expenses, lost earnings and earning capacity as a result.

103.    Throughout the events described in this Complaint, Defendants repeatedly acted with conscious, callous, and/or reckless disregard for the rights, interests, health and safety of their passengers, such that the imposition of punitive damages, under CA Civil Code Section 3294 and/or all other applicable law, is necessary and appropriate to punish them for their course of conduct, and to deter them and others, and protect the public, from the consequences of similar conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, and all others similarly situated, pray for judgment against Defendants, and each of them, as follows:

1.    An order certifying the proposed Class pursuant to Fed. R. Civ. P. Rule 23(a) and (b)(1), (b)(2), (b)(3) and/or (c)(4), designating Plaintiffs as named representatives of the Class and designating the undersigned as Class Counsel;

2.    For damages totaling in excess of Five Million Dollars ($5,000,000.00), inclusive of compensatory damages for Plaintiffs' injuries, including emotional pain and suffering, in an amount to be proven at trial;

3.    Punitive and/or exemplary damages under applicable causes of action;

4.    An injunction requiring Defendants to: disclose to future passengers the rate of risk of communicable disease upon their cruise ships; implement disinfecting and sanitizing procedures on each of their ships in between and during voyages; disembark and quarantine passengers when Defendants become aware of a heightened risk of communicable disease aboard a ship; canceling or discontinuing the operation of cruises when Defendants know or should have known of a potential deadly pathogen or similar aboard their ships.

5.    An award of attorneys' fees and costs, as allowed by law;

6.    An award of pre-judgment and post-judgment interest, as provided by law;

CLASS ACTION COMPLAINT

7.      Leave to amend this Complaint to conform to the evidence produced at trial; and

8.      For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: April 8, 2020                          Respectfully submitted,

                                              MARY ALEXANDER & ASSOCIATES, P.C.


                                              By: _____
                                                  Mary E. Alexander, Esq.
                                                  Brendan D.S. Way, Esq.

Dated: April 8, 2020                          LIEFF CABRASER HEIMANN & BERNSTEIN, LLP


                                              By: _____
                                                  Elizabeth J. Cabraser, Esq.
                                                  Jonathan D. Selbin, Esq.
                                                  Mark P. Chalos, Esq.


                                              *Attorneys for Plaintiffs*